

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*50 Main Street, Suite 1100*
*White Plains, New York 10606*

July 31, 2024

**BY ECF & EMAIL**

The Honorable Vincent L. Briccetti
United States District Judge
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

    Re:    *United States v. Nileshkumar Patel*, 24 Cr. 268 (VB)

Dear Judge Briccetti,

    The Government respectfully submits this letter in advance of the sentencing of defendant Nileshkumar Patel, currently scheduled for August 8, 2024. The defendant pled guilty, pursuant to a plea agreement, to one count of conspiracy to operate an unlicensed money transmitting business, in violation of Title 18, United States Code, Section 371, and one count of operation of an unlicensed money transmitting business, in violation of Title 18, United States Code, Sections 1960 and 2. The applicable range under the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") is 8 to 14 months' imprisonment, as stipulated to under the parties' plea agreement and as correctly calculated by Probation in the Presentence Report ("PSR"). For the reasons explained below, a sentence within that Guidelines range would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

**A.    Factual Background**

    **1.    A Dark-Web Vendor Who Serviced Drug Dealers and Computer Hackers Used an Illegal Money-Transmitting Business to Fund the Conversion of Cryptocurrency to Cash**

    From at least July 2021 through at least September 2023, several individuals, including the defendant, were involved in a conspiracy to operate, and did in fact operate, an unlicensed money-transmitting business. The money-transmitting business had two sets of customers: customers who wanted to convert cryptocurrency to cash and customers of a traditional "hawala" who wanted to transfer money to individuals in India by avoiding the regulated banking system.[1] (PSR ¶ 14.)

---

[1] A "hawala" is a term that refers to an unregulated method of transferring money—usually internationally—from one person to another without the money being physically transported from one location another. Rather, someone who seeks to have money transferred relies on brokers who

With respect to the cryptocurrency-to-cash conversions, in or about April 2021, law enforcement identified a vendor (the "Vendor") on the dark web who was offering to convert cryptocurrency into cash in exchange for a fee. That is, the Vendor would accept cryptocurrency from a customer, convert a part of that cryptocurrency into cash that was shipped to that customer via the United States Postal Service ("USPS"), and keep the remaining part of the cryptocurrency as payment for the conversion. The Vendor told an undercover officer in an online chat that the customers of the cryptocurrency-to-cash business included drug dealers and computer hackers. (PSR ¶¶ 14-16.)

To provide the cash for the cryptocurrency-to-cash customers, the Vendor turned to a hawala network that operated in the United States and India. In the United States, the Vendor worked with individuals like the defendant, who would collect U.S. currency from hawala customers in the eastern United States who wanted to transfer funds to individuals in India. That U.S. currency would then be mailed to cryptocurrency-to-cash customers in exchange for cryptocurrency. (PSR ¶ 14.) Using the cryptocurrency received from those customers, the Vendor would then transfer funds to members of the hawala network based in India, who, in turn, arranged the disbursement of Indian rupees to the individuals in India designated by the U.S.-based hawala customers. (PSR ¶¶ 14-16.) Accordingly, the cash collected by the defendant and his co-conspirators served to fund both illegal shipments of U.S. currency to cryptocurrency-to-cash customers in the United States and illegal transfers of Indian rupees to hawala customers in India outside the regulated banking system. (*See* PSR ¶¶ 14-16.)

2. **The Defendant Coordinated and Delivered Cash Totaling Approximately $1.45 Million Dollars**

Beginning in or about February 2023, law enforcement began working with a confidential source ("CS-1") who would arrange the controlled pick-up of cash from the defendant and other operators of the hawala, package the cash, and then drop off the packages at a USPS post office for delivery to the cryptocurrency-to-cash customers. Individuals like the defendant collected and delivered the cash to CS-1 in either Tarrytown or Port Chester, New York, and the amount of cash typically ranged from $100,000 to $300,000 at a time. From February 10, 2023, through September 27, 2023, CS-1, as part of his cooperation with law enforcement, arranged and participated in 80 controlled pick-ups of cash totaling approximately $15,067,000. (PSR ¶¶ 16-17.)

Defendant Nileshkumar Patel participated in two of these controlled pick-ups, involving approximately $370,010 in cash. Specifically, in June 2023, the defendant coordinated and carried out a delivery of $110,010 to CS-1, and in September 2023, the defendant and co-defendant Brijeshkumar Patel coordinated an exchange of $260,000 in cash, which the defendant himself ultimately delivered to CS-1. In addition to delivering $370,010 in cash during controlled pick-ups, the defendant also made several additional similar deliveries of cash to CS-1 and others prior to the start of CS-1's cooperation in February 2023. (PSR ¶¶ 16-18.) Neither the

---

use their own capital to disburse money and informal ledgers to track the receipt and disbursal of money. *See United States v. Banki*, 685 F.3d 99, 103 (2d Cir. 2012); https://www.investopedia.com/terms/h/hawala.asp.

money-transmitting business nor the defendant nor any of the defendant's co-conspirators were licensed or registered to operate as a money-transmitting business in New York or under Federal law. (PSR ¶ 19.)

### B. The Plea and Guidelines Calculation

On May 2, 2024, the defendant pleaded guilty, pursuant to a plea agreement, to one count of conspiracy to operate an unlicensed money-transmitting business, in violation of Title 18, United States Code, Section 371, and one count of operating an unlicensed money-transmitting business. in violation of Title 18, United States Code, Sections 1960 and 2. (PSR ¶¶ 2-3, 5.)

As reflected in the parties' plea agreement and correctly calculated in the PSR, the applicable Guidelines range is 8 to 14 months' imprisonment calculated on the basis of an offense level of 11—a base offense level of 18 tied to the total amount of funds transmitted by the defendant, minus two levels for a minor participant reduction, another two levels for meeting the criteria under U.S.S.G. § 4C1.1, and another three levels for the defendant's timely acceptance of responsibility—and Criminal History Category I. (PSR ¶ 5; *accord* PSR ¶¶ 25-39.)

Probation recommends a sentence of 3 years' probation and a special condition of 200 hours of community service. (PSR at pp. 22-23, 26). Probation notes that the defendant "is a first-time offender, has accepted responsibility for his conduct, demonstrated positive post-arrest behavior, and has no substance abuse concerns." (PSR at p. 23).

The defense seeks "a probationary sentence with a term of home confinement," Dkt. 117 ("Def. Sent. Mem.") at 12, citing the defendant's limited role in, and financial gain from, the illegal money transmitting business.

### C. Discussion

#### 1. Applicable Law

The Sentencing Guidelines continue to provide important guidance to sentencing courts following *United States v. Booker*, 543 U.S. 220 (2005), and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005). Though they are advisory and not mandatory, the Sentencing Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions." *Gall v. United States*, 552 U.S. 38, 46 (2007). Thus, district courts should treat the Sentencing Guidelines as the "starting point and the initial benchmark" in sentencing proceedings. *Id.* at 49; *see also Booker*, 543 U.S. at 264 (explaining that district courts must "consult" the Sentencing Guidelines and "take them into account" when sentencing). Accordingly, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall*, 552 U.S. at 49.

After calculating the applicable Guidelines range, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant," (2) the purposes of sentencing discussed in the next paragraph, (3) "the kinds of sentences available," (4) the Guidelines range itself, (5) any relevant policy statements by the Sentencing Commission, (6) "the need to avoid

unwarranted sentence disparities among defendants," and (7) "the need to provide restitution to any victims." 18 U.S.C. § 3553(a)(1)-(7); *see also Gall*, 552 U.S. at 49-50 & n.6.

In determining the appropriate sentence, Section 3553(a) directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A)　to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)　to afford adequate deterrence for criminal conduct;

(C)　to protect the public from further crimes of the defendant; and

(D)　to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

### 2. A Sentence Within the Applicable Guidelines Range Is Appropriate

Under the above framework, the Government respectfully submits that a sentence within the applicable Guidelines range of 8 to 14 months' imprisonment is sufficient but not greater than necessary to comply with the purposes of sentencing, taking into account the factors set forth in 18 U.S.C. § 3553(a). In particular, the nature and seriousness of the offense, the need to promote respect for the law, and the need to promote adequate deterrence all cut in favor of a sentence within the Guidelines range.

*First*, a sentence within the Guidelines range would reflect the seriousness of the defendant's offense.

The regulation of money-transmitting businesses helps to limit the ability of criminals—like the drug dealers and hackers who used the defendant's money transmitting business—to use or move money in connection with criminal activities. Indeed, the statutes violated by the defendant and his co-conspirators here are designed to prevent the movement of funds in connection with drug dealing and terrorism, among other forms of money laundering. *See* H.R. Rep. No. 107-250, at 33, 54 (2001). Thus, as Congress recognized, efforts to evade the regulated financial system (and the due diligence and know-your-customer requirements that system entails) present a serious danger—in addition to depriving U.S. regulators and financial institutions of taxes and fees normally associated with transmitting money.

Although the Government does not contend that the defendant here had direct knowledge that hackers or drug dealers were among the recipients of cash he collected and delivered to CS-1, the illicit nature of the defendant's conduct is nonetheless clear. Specifically, through multiple parking-lot cash exchanges, the defendant dropped off shopping bags with bundles of cash totaling hundreds of thousands of dollars to CS-1, whom the defendant did not know personally and with whom the defendant communicated using coded language and trade craft, as part of a larger money

transmitting business that moved tens of millions of dollars. (PSR ¶¶ 14-19.) In addition to the two cash deliveries that the defendant made after CS-1 began cooperating with law enforcement, the defendant also "made several additional similar deliveries of cash to CS-1 and others on behalf of the conspiracy," (PSR ¶ 18), and had "more than a thousand contacts with [a] leader of the conspiracy based in India during this period," Plea Tr. at 40.[2]

While the defendant appears to have believed he was just facilitating the illegal transmission of money to otherwise-law-abiding individuals in India, he bore the risk that customers of the business might, in fact, have more nefarious reasons to evade the regulated financial system. Here, that risk became reality. A sentence within the Guidelines range thus is necessary to reflect the seriousness of bypassing legal channels of money transmission in favor of illegal means that allow criminals to benefit from the proceeds of their crimes.

*Second*, a sentence within the Guidelines range is also necessary to afford adequate specific and general deterrence and to promote respect for the law. Although the defendant does not have any prior convictions, he was a repeat participant in the illegal money-transmitting business, making two deliveries observed by law enforcement and several additional similar deliveries prior to the start of law enforcement surveillance. The sentence here must be fashioned to deter the defendant from future criminal conduct and deter others who might consider making easy money by delivering bundles of cash that make their way into the hands of criminals.

Moreover, the prospect of general deterrence and promotion of respect for the law in the case is not a mere hypothetical. Without any prompting from the Government,[3] the charges in this case have been covered both in prominent industry publications relating to cryptocurrency and in international publications covering India-related news.[4] There is no question that those who would use cryptocurrency and/or hawala networks to illegally transmit money need to be deterred, and the coverage afforded to enforcement efforts such as the Government's in this case provides an important tool in doing so.

Finally, the mitigating factors identified by the defense do not support a downward variance. To be sure, the Government acknowledges that the defendant played a smaller role than others involved in the conspiracy, and that the defendant received limited personal gain relative to the tens of millions of dollars transferred by the business. For that reason, the Government stipulated to the two-point adjustment for the defendant's minor role in the offense, pursuant to

---

[2] The defendant and his co-defendants received between about $150 and $1,500 per delivery on behalf of the hawala, and they were also customers of the hawala. Plea Tr. at 40.

[3] The Government has not issued a press release or made any comment to the media regarding this case.

[4] *See, e.g.*, Amitoj Singh, "FBI Charges 6 for Allegedly Running $30M Money Transmitting Business Using Crypto," CoinDesk, Oct. 20, 2023, https://www.coindesk.com/policy/2023/10/20/fbi-charges-6-for-allegedly-running-30m-money-transmitting-business-using-crypto/; HT News Desk, "How 5 Indian Americans allegedly laundered $30m in Cash-for-Bitcoin scam in New York," Hindustan Times, Oct. 25, 2023, https://www.hindustantimes.com/world-news/us-news/how-5-indian-americans-allegedly-laundered-30m-in-cash-for-bitcoin-scam-in-new-york-101698224423811.html.

U.S.S.G. § 3B1.2(b). Additionally, the Government acknowledges that the defendant has no prior convictions—as reflected in the defendant's zero criminal history points and two-point offense-level reduction pursuant to U.S.S.G. § 4C1.1. But these factors, along with the defendant's acceptance of responsibility, are adequately accounted for in the defendant's Guidelines calculation and resulting Guidelines range.

In sum, a sentence within the applicable Guidelines range would adequately balance the various considerations under § 3553(a) and would be sufficient, but not greater than necessary, to comply with the purposes of sentencing.[5]

**D. Conclusion**

For the reasons set forth above, the Government respectfully requests that the Court impose a sentence on the defendant within the Guidelines Range of 8 to 14 months' imprisonment.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: _____
Benjamin Levander
Assistant United States Attorney
Tel: (914) 993-1930

Cc: Joel Silberman, Esq.

---

[5] In light of recent Second Circuit decisions, the Government respectfully requests that, for each special condition of supervised release that the Court imposes, the Court briefly state its reasons for concluding that each such special condition is "reasonably related" to at least one of the factors set forth in U.S.S.G. § 5D1.3(b). *See, e.g.*, *United States v. Sims*, 92 F.4th 115 (2d Cir. 2024) (vacating special condition and remanding for district court to provide sufficient explanation for imposition of condition); *United States v. Oliveras*, 96 F.4th 298 (2d Cir. 2024) (same); *United States v. Jimenez*, No. 22-1022, 2024 WL 1152535 (2d Cir. Mar. 18, 2024) (summary order) (same).